UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:16-CR- |
| | ) | JUDGE |
| THOMAS R. MAXWELL HENSLEY | ) | |

PLEA AGREEMENT

The United States of America, by and through the United States Attorney for the Eastern District of Tennessee, the defendant, Thomas R. Maxwell Hensley, and the defendant's attorney, Rick Spivey, have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the Information:

a) Count One; Knowingly, intentionally, and without authority, combining, conspiring, confederating and agreeing with diverse others to commit the following offense against the United States of America: knowingly, intentionally, and without authority distributing, or possessing with intent to distribute, anabolic steroids, a Schedule III controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1), 841(b)(1)(E).

The baseline punishment for this offense is as follows: a maximum of 10 years' imprisonment; a maximum fine of $500,000.00; a mandatory minimum two years' and a maximum of life on supervised release; and a $100.00 mandatory assessment.

If the defendant has one prior felony drug conviction, then the punishment for this offense is as follows: a maximum of 20 years' imprisonment; a maximum fine of $1,000,000.00; a mandatory minimum four years' and a maximum of life on supervised release; and a $100.00 mandatory assessment.

b) Count Two; knowingly, intentionally, and without authority combine, conspire, confederate and agree with each other and with diverse others to commit the following offenses against the United States of America, in violation of 18 U.S.C. § 1956(a)(1)(B)(i): knowingly conducting and attempting to conduct financial transactions affecting interstate commerce and foreign commerce, to wit: currency transactions which involved the proceeds of a specified unlawful activity, that is, the conspiracy to distribute, and possess with intent to distribute, anabolic steroids, a Schedule III controlled substance, as charged in Count One, which is hereby incorporated by reference, with the intent to conceal and disguise the nature, location, source, ownership, and control of the proceeds of a specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(h).

The punishment for this offense is as follows: a maximum of 20 years' imprisonment; a maximum fine of $500,000.00; a maximum of three years' supervised release; and a $100.00 mandatory assessment.

2. In consideration of the defendant's guilty plea(s), the United States agrees to move the Court at the time of sentencing to dismiss the remaining count(s) against the defendant in this Information.

3. The defendant has read the Information, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes

of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a) Through the testimony of numerous witnesses, including law enforcement officers, the United States would demonstrate, beyond a reasonable doubt, that beginning from on or about January 1, 2012, to on or about July 7, 2015, in the Eastern District of Tennessee, the defendant, Thomas R. Maxwell Hensley, did knowingly, intentionally, and without authority, combine, conspire, confederate and agree with at least one other person to distribute, and possess with the intent to distribute, anabolic steroids, a Schedule III controlled substance.

b) The United States would further demonstrate, beyond a reasonable doubt, that beginning from on or about January 1, 2012, to on or about July 7, 2015, in the Eastern District of Tennessee, the defendant, Thomas R. Maxwell Hensley, did knowingly, intentionally, and without authority combine, conspire, confederate and agree with each other and with diverse others to commit the following offenses against the United States of America, in violation of 18 U.S.C. § 1956(a)(1)(B)(i): knowingly conducting and attempting to conduct financial transactions affecting interstate commerce and foreign commerce, to wit: currency transactions which involved the proceeds of a specified unlawful activity, that is, the conspiracy to distribute, and possess with intent to distribute, anabolic steroids, a Schedule III controlled substance, as charged in Count One, which is hereby incorporated by reference, with the intent to conceal and disguise the nature, location, source, ownership, and control of the proceeds of a specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

Overview of Offenses

c) In 2012, in the Eastern District of Tennessee, law enforcement began investigating a drug trafficking organization in Johnson City, Tennessee which specialized in the importation, manufacture, and distribution of anabolic steroids. To accomplish their conspiracy, members of the instant organization obtained raw steroid products from overseas suppliers, particularly, in China. Those materials were paid for predominately by international wire transfers. The contraband was then transported to coconspirators in the United States via commercial and/or governmental parcel shipment.

d) Once received, collaborators utilized a series of clandestine laboratories to manufacture the raw steroid materials into usable products. These laboratories were concealed within an assortment of area residences, which were owned or rented by members of the instant conspiracy. The laboratory process, including the mixing of chemicals, the preparation of dosage units, and the packaging of the final product, was accomplished by a network of coconspirators devoted to these functions. Numerous different types of steroid products were made. The items needed to complete the manufacturing process, including glassware and other supplies, were purchased from various sources throughout the Unites States, both local and out-of-state.

e) In order to achieve sales, organization members operated a series of websites which served as marketplaces for steroid products. Purchasers would access these semi-secure websites, peruse the merchandise, and place orders. Payment was typically accomplished by money order or wire transfer, although electronic currency, such as Bitcoin, was also used. Upon receipt of orders, coconspirators would compile the appropriate products and ship the goods to purchasers via the United States Postal Service.

f) To further the drug conspiracy, those involved also engaged in money laundering so as to conceal the source of the funds and its connection to illegal conduct. Specifically, steroid buyers would send their purchase money to one of many money receivers located throughout the country and around the world. Those persons, who often hid their true identities through the use of false names and documents, would then take receipt of the funds and often convert them to cash. This was done to both monetize the illicit gains, and facilitate the underlying drug operation. After withdrawing their cut of the proceeds, theses collaborators then transferred the lion's share of the profits to coconspirators located in Tennessee.

g) Overall, the instant drug conspiracy was responsible for the distribution of hundreds of thousands of dosage units of anabolic steroids. Likewise, the laundered funds associated with the instant drug conspiracy totaled in excess of $1,500,000.00.

Conduct of the Defendant

h) As part of his role in the instant drug and money laundering conspiracies, the defendant, Thomas R. Maxwell Hensley, was involved in a variety of activities. Hensley used international wire transfers to purchase raw steroids products from overseas suppliers. Hensley further assisted in the manufacture, packaging, and shipment of anabolic steroids from within those clandestine laboratories. Hensley also procured equipment and material necessary to complete the manufacturing process. Additionally, Hensley personally distributed anabolic steroids as part of the instant conspiracies. Hensley also received drug sale proceeds via wire transfers by utilizing authentic and false identities. Hensley then pooled those funds into cash, withdrew a percentage as compensation, and conveyed the remainder to coconspirators in Tennessee.

Summary

i) The defendant admits to conspiring to distribute, and to possess with the intent to distribute, anabolic steroids, a Schedule III controlled substance. The defendant further admits to knowingly and intentionally joining in the conspiracy. The defendant further admits to actively participating in the conspiracy.

j) The defendant admits to conspiring to commit money laundering. The defendant further admits to knowingly and intentionally joining in the conspiracy. The defendant further admits to actively participating in the conspiracy.

k) The defendant also admits and stipulates that, for purposes of sentencing pursuant to U.S.S.G. § 2D1.1(c)(10), he is accountable for the equivalent of at least 60 kilograms, but less than 80 kilograms, of marijuana.

l) The defendant further admits and stipulates that, for purposes of sentencing pursuant to U.S.S.G. § 2D1.1(b)(7), he, or a person for whose conduct he is accountable under § 1B1.3 (Relevant Conduct), distributed a controlled substance through mass-marketing by means of an interactive computer service.

m) The defendant also admits and stipulates that, for purposes of sentencing pursuant to U.S.S.G. § 3B1.1(c), he was an organizer, leader, manager, or supervisor of criminal activity.

n) The defendant lastly admits and stipulates that, for purposes of sentencing pursuant to U.S.S.G. §§ 2S1.1(a)(2) and 2B1.1(b)(1)(C), he is accountable for more than $15,000.00, but less than $40,000.00.

5. The defendant is pleading guilty because the defendant is, in fact, guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

a) the right to plead not guilty;

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the

defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. The defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to: (1) the victim(s) of any offense charged in this case (including dismissed counts); and (2) the victim(s) of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's charged offense(s).

10. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture as proceeds of the defendant's criminal activities which are in the possession or control of the defendant or the defendant's nominees. The defendant

agrees to a personal money judgment of $125,000.00, which represents the proceeds of, and property which facilitated, the conspiracy to distribute, and possess with the intent to distribute, controlled substances as charged in Count One of the Indictment. The defendant further agrees to fully assist the United States in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant lastly agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the tendering of a cashier's check made payable to the United States Marshal Service in the amount of $125,000.00. Such cashier's check is to be tendered at or before sentencing.

11. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed

with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

12. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the

Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

13. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed

not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

14. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

15. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

NANCY STALLARD HARR
ACTING UNITED STATES ATTORNEY

_6/27/16_
Date

By: _____
NICHOLAS J. REGALIA
Assistant United States Attorney

_6/16/16_
Date

_____
THOMAS R. MAXWELL HENSLEY
Defendant

_6/21/16_
Date

_____
RICK SPIVEY
Attorney for the Defendant